UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
:
ZENOVA CORP., *doing business as Lookit* : **MEMORANDUM**
*Design*, : **DECISION AND ORDER**
:
                              Plaintiff, : 13 Civ. 745 (BMC)
:
            - against - :
:
MOBILE METHODOLOGY, LLC and TAL :
ETSHTEIN, *a/k/a Tal Etstein*, :
:
                              Defendants. :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff in this copyright infringement action moves for summary judgment dismissing one of defendants' counterclaims against the corporate plaintiff, all of defendants' counterclaims against the corporate plaintiff's principal (a counterclaim defendant), and to strike one of defendants' affirmative defenses. I hold that: (a) defendants may not defend against the copyright infringement claim on the ground that they own the subject work as a "work made for hire," as the parties did not "expressly agree in a written instrument signed by them that the work shall be considered a work for hire . . . ", as required by 17 U.S.C. § 101; (b) defendants may not maintain a claim for copyright infringement because neither they nor anyone through whom they claim have registered the copyright on which they purport to sue; and (c) defendants have failed to produce any evidence that plaintiff's principal committed any tortious act, and he therefore has no individual liability. Accordingly, plaintiff's motion is granted.

**BACKGROUND**

The facts relevant to this motion are neither disputed nor complicated. The parties' relationship began in 2007 when plaintiff Zenova Corp. ("Zenova"), which designs and advises on websites, provided web design services to defendant Mobile Methodology, LLC ("MML"). MML is owned by defendant Tal Etshtien, who also owns or controls other companies to which Zenova had provided services. The principal of Zenova is counterclaim defendant Graham Murray.

In 2010, Zenova and MML, through Etshtien, had negotiations concerning a web development project that Zenova would undertake for MML. The purpose of the contemplated agreement was for Zenova to deliver a website framework to defendants that they could use to present and sell their advertising services. This ultimately produced a product called the "*MMInfluencer*."

The negotiations resulted in a written agreement in July 2010 (the "July Agreement") that contained a number of terms, some of which are relevant to the present motion. First, the agreement contained a $5500 estimate of Zenova's charges, and provided for hourly billing and a deposit upon execution of the agreement. Second, the scope of work was defined as "only that which is described in the Web Development Specifications and the [instant] Web Development Agreement." Third, the agreement stated that Zenova was "producing this project as 'works for hire'" for MML and Etshtien, and that "[u]pon full payment of all invoices due, copyright and all rights to page designs, web development source code, and graphic source files" would belong to MML and Etshtien. Fourth, the agreement provided that: "To be valid, this agreement must be signed within 30 days of the date signed by [Zenova], and be accompanied by an initial deposit." Fifth, the agreement stated that it "may have attachments consisting of one or more initialed and

2

dated CHANGE ORDERS, whose terms shall become part of this contract." The agreement, after the signature execution lines, noted: "ATTACHMENTS FOR THIS AGREEMENT: 1. Web Development Specifications – 7/10/10." The Web Development Specifications discuss the specifics of the watermarking system project.

Here is the problem: Zenova signed the July Agreement on July 10, 2010, but defendants never signed it, although the parties continued to work within the scope of work as defined in the contract. Indeed, defendants never signed anything relating to the agreement within the 30 days that the agreement required. It seems that at the time Zenova signed the agreement, the parties were continuing to discuss the specifications for the website because more than six months later, in January, 2011, Etshtien signed each page of a detailed set of specifications that greatly exceeded the contract price in the agreement (the "January Change Order"). Etshtien handwrote across the top of the first page, "Change Order from 7/10/10 contract between Zenova and Mobile Methodology, LLC." The January Change Order was for a great deal more money than the $5500 provided in the July Agreement.

The parties' relationship broke down about seven months later over payment – Zenova asserted there were past due amounts, and defendants asserted that Zenova had overcharged and/or failed to meet the required specifications. Apparently, by the time of the breakdown, Zenova had provided some deliverable to defendants. I know that because the record shows that when the relationship broke down, Zenova demanded that defendants cease and desist from using the *MMInfluencer*.

Defendants refused. Zenova obtained a copyright for the program, and demanded that MML's website host take down the *MMInfluencer*. Defendants, in response, sued Zenova and Graham in state court for breach of contract and tortious interference with their contract with

their website host.  That action is pending.  And in response to that action, Zenova filed the instant action for copyright infringement.

## DISCUSSION

### I. Work for Hire

Zenova moves to strike defendants' affirmative defense to Zenova's copyright infringement claim.  This affirmative defense asserts that defendants cannot be liable for copyright infringement as *MMInfluencer* was a "work made for hire" and the *MMInfluencer* is therefore defendants' property.  Zenova's argument relies on the provisions of 17 U.S.C. § 101, which defines a "work made for hire" as "a work specially ordered or commissioned . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  Thus, under copyright law, ownership of a copyright vests in the person for whom an independent contractor creates the work, but only if there is the express, written, and signed agreement to that effect.  See Playboy Enters., Inc. v. Dumas, 53 F.3d 549, 557-58 (2d Cir. 1995).

There seems to be no dispute that the *MMInfluencer* was intended by both parties as a work for hire.  As noted above, the July Agreement that Zenova prepared and signed contained the express, written language that the statute requires.  Zenova's argument, however, is that the July Agreement also contained a condition precedent to the agreement's validity – that defendants had to sign it within 30 days of Zenova's signature.  Since that never happened, Zenova contends, the July Agreement was not "signed by" both parties, and thus, the statutory requirements were not satisfied.  Under this view, it does not matter what the parties intended, for Congress has rendered their intent non-determinative unless they expressed it in writing and signed it.

In opposing the instant motion, defendants ignore – indeed, they do not even mention – the provision in the agreement that required their signature within 30 days of Zenova's for the July Agreement to be valid. They sidestep that provision by pointing out that the agreement contemplated that change orders would be deemed part of the agreement and that Etshtien, on behalf of both defendants, in fact signed a change order expressly referencing the July Agreement. Reading the July Agreement together with the January Change Order, they therefore contend that the agreement does constitute the "express[] agree[ment] in a written instrument signed by them," sufficient to satisfy the work for hire condition of 17 U.S.C. § 101.

In my view, Zenova's argument presents a threshold question of common law contract formation rather than copyright law. Clearly, putting aside its legal enforceability, there was some contractual or quasi-contractual relationship between the parties; both had an expectation that Zenova would do some amount of work for which it would be, and at least in part was, paid. At some point in this case, it may be necessary to rely on extrinsic evidence as to what the agreement was, and that would include a review of both the July Agreement and the January Change Order. But the terms *in toto* of any potential quasi-contract are not before me.[1]

Viewed from the perspective of contract formation, the July Agreement became a dead letter 30 days after Zenova signed it and defendants did not. The provision was clear: "To be valid, this agreement must be signed within 30 days of the date signed by [Zenova]." Defendants did not meet that timetable. The conclusion is unavoidable that defendants did not countersign the agreement within 30 days because they wanted a firm agreement on the specifications, or

---

[1] I reject defendants' argument that Zenova is judicially estopped from denying the validity of the July Agreement by reason of litigation positions it has taken in the parallel state court action. As defendants appear to recognize, judicial estoppel cannot apply unless a court has relied on a party's litigation statements in awarding relief, see In re Adelphia Recovery Trust, 634 F.3d 678, 695-96 (2d Cir. 2011), and defendants have not pointed to anything in the state court action where that occurred. In addition, defendants point to prelitigation instances where Zenova has allegedly confirmed the existence of the July Agreement, but since defendants have not made any argument as to the legal consequences of such statements aside from their judicial estoppel argument, I need not consider them.

modifications to them, before they would sign, and that second agreement was not reached until the January Change Order. Although they signed the January Change Order, they did nothing that would have been legally sufficient to revive the expired July Agreement.

The law is well established that when parties state an express condition to the validity of their contract, then the courts will not enforce the agreement if the condition is not met. Jordan Panel Sys. Corp. v. Turner Constr. Co., 45 A.D.3d 165, 841 N.Y.S.2d 561 (1st Dep't 2007), illustrates this. There, a general contractor, prior to receiving the general contract, tendered an agreement to a subcontractor which provided that the subcontractor would receive a subcontract. The agreement, however, stated it would not be binding unless the general contractor signed it: "Unless and until [the contractor] executes this Subcontract, [the contractor] shall not be bound by any of the terms or conditions herein." Id. at 167, 841 N.Y.S.2d at 563. The subcontractor nevertheless proceeded to do work in the expectation that it would receive written authorization, even alleging that the general contractor had orally authorized it to proceed. The court dismissed the subcontractor's suit for breach of the agreement, promissory estoppel, and *quantum meruit*, holding that:

> It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed. In this case, in which plaintiff subcontractor sues defendant general contractor for revoking an alleged oral award of a subcontract, undisputed documentary evidence establishes that defendant advised plaintiff – in writing, and in terms that left no room for doubt – that defendant did not intend to be contractually bound to hire plaintiff until both of these highly sophisticated parties had signed the contemplated written agreement.

Id. at 166, 841 N.Y.S.2d at 562 (citation and quotation omitted).

The flaw in defendants' argument here is that it ignores the precondition to the formation of the contract. Under defendants' interpretation, it would be as if the parties never contemplated

6

an expiration date for the acceptance of Zenova's contractual offer. If defendants had signed the January Change Order within 30 days of Zenova's signing the July Agreement (instead of in the following January), defendants' argument that the change order constituted the written acceptance of the July Agreement that the agreement required, including its work for hire clause, might have merit. This is because, as defendants point out, the agreement expressly provided that change orders would be deemed part of the agreement.

But by the time Etshtien signed the January Change Order, the offer represented by Zenova's July Agreement had expired by its terms. Etshtien could write on the change order that it was pursuant to "7/1/10 contract between Zenova and Mobile Methodology, LLC" – he could write whatever he wanted – but he had no right to unilaterally change the condition precedent to the validity of that contract. In other words, he could not by his own dint relate a change order to a contract that had never come into being. At most, the January Change Order constituted either a proposal by Etshtien for Zenova to do work based on the specifications in that change order, or a new agreement between the parties to do so. Which, if either, of those scenarios eventuated between them is not before me on this motion; it suffices for present purposes that neither of them contained an express, written, mutually signed work for hire clause.

## II. Defendants' copyright counterclaim

Defendants' first counterclaim is that Zenova improperly copyrighted *MMInfluencer* and they seek to have the registration invalidated. Zenova does not challenge that counterclaim on this motion. Zenova, however, seeks summary judgment dismissing defendants' second counterclaim, which claims that Zenova has infringed upon defendants' copyright. Zenova points out that defendants have no registered copyright over *MMInfluencer*, and only a registered owner of a copyright may sue for its infringement. This is hornbook copyright law. <u>See</u> 17

U.S.C. § 501(b) ("*The legal or beneficial owner* of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed *while he or she is the owner of it*") (emphasis added); see also Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 701 (2d Cir. 1992) ("In any suit for copyright infringement, the plaintiff must *establish its ownership of a valid copyright*") (emphasis added).

In response, defendants appear to make two arguments, both dependent upon the fact that Zenova has copyrighted the work in question. The first is that since defendants have asserted a defense of "work made for hire," their claim does involve infringement over a registered copyright as to which they claim ownership. This argument must be rejected in light of the determination above that the parties had no legally enforceable work for hire agreement. The second, related argument is that defendants are asserting a constructive trust over Zenova's copyright and so, again, their claim does involve a registered copyright. Putting aside that there is no such theory pled in the counterclaim, it also depends on defendants having acquired rights as a "work made for hire," a theory which I have, again, found legally insufficient.

### III. Graham's personal liability

Defendants' third counterclaim alleges unfair competition against both Zenova and Murray for misappropriating their trade secrets. Zenova and Murray have moved to dismiss the counterclaim as against Murray only on the ground that Murray acted as a corporate officer in this dispute and has no personal liability. Defendants explain in their opposing memorandum that their third counterclaim incorporates earlier allegations against Murray which they label "conversion" or copyright infringement. I have already dismissed all copyright infringement counterclaims against Zenova and Murray, and so we are left with two common law tort claims.

I agree with defendants that if Zenova has been improperly using their trade secrets, Murray could be personally liable for having directed Zenova to do that. A corporate officer is liable for the torts of a corporation where he personally directed the corporation to act. See State of New York v. Shore Realty Corp., 759 F.2d 1032, 1052 (2d Cir. 1985). This is not a breach of contract claim against a corporation that grafts on a tort theory to hold a corporate officer liable. Compare East End Labs., Inc. v. Sawaya, 79 A.D.3d 1095, 1096, 914 N.Y.S.2d 250, 251 (2d Dep't 2010). Indeed, it is significant that defendants have not pled a breach of contract claim against Zenova. They might have if all Zenova had done was refuse to deliver the subject work to defendants, if the contract required Zenova to do so. But defendants contend Zenova itself used the project, together with defendants' trade secrets, for its own commercial advantage. That is not something which defendants claim was prohibited by the parties' contract; it is, rather, a separate tort outside of the contract, and if Murray directed its commission by Zenova, he could have personal liability.

However, just because there is some legal theory upon which a claim against Murray could be stated does not mean that defendants have either stated or raised an issue of fact as to such a theory. First, the counterclaim does not state a claim against Murray under the requirements of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). It does not contain a single factual allegation as to anything he did. It simply peppers him with a bunch of legal conclusions, e.g., "Zenova and Murray converted and infringed the copyrights and copyrighted materials." (¶86).

I might overlook the failure to adequately plead the claim since Zenova and Murray never moved to dismiss it under Fed. R. Civ. P. 12(b)(6). But despite having completed discovery, defendants' memorandum in opposition to the motion for summary judgment still does not tell

9

me a single action that Murray took. It continues with the same application of legal labeling that the complaint contains. Of course, since there seems no dispute that Murray is the primary officer and principal of Zenova, I could draw the inference that any use of the materials by Zenova was at the direction of Murray. But it is not permissible for me to make defendants' case for them. Nor am I required to scour the record to piece together evidence that might give rise to a claim against Murray. Federal Rule of Civil Procedure 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002). Rather, under Rule 56(c)(3), a district court is obligated only to consider the materials cited to it by the parties. Here, defendants' memorandum cites only to their counterclaim and the July Agreement, and from there reasons that there must be a claim against Murray. With no evidence of Murray's tortious conduct having been presented to me, there is no basis for denying summary judgment.

## CONCLUSION

Zenova and Murray's motion for summary judgment dismissing all claims against Murray, defendants' second counterclaim, and striking their affirmative defense asserting "work made for hire" is granted.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
February 4, 2014